**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**AT CINCINNATI**
**CASE NO. 19-56**

| | | |
|---|---|---|
| **ROBERT ANTHONY FAMBRY** | : | |
| **4164 Long Lake Dr., Apt. 15316** | : | |
| **Batavia, OH 45103** | : | |
| | : | **Judge** _____ |
| | : | |
| **PLAINTIFF,** | : | **Magistrate** _____ |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH UECKER, in his official** | : | **COMPLAINT AND JURY DEMAND** |
| **capacity as Senator of Ohio, District 14** | : | |
| **1 Capitol Square, 2nd Floor** | : | |
| **Columbus, OH 43215** | : | |
| | | |
| **DEFENDANT.** | | |

_____

Plaintiff, Robert Anthony Fambry, for his causes of action against Defendant state as follows:

## NATURE OF ACTION

1. In this 42 U.S.C. § 1983 official capacity suit, Plaintiff seeks declaratory and injunctive relief under the First and Fourteenth Amendments to the United States Constitution, alleging that Defendant, acting under color of law, deprived Plaintiff of his right of free speech and due process as protected by the First and Fourteenth Amendments to the United States Constitution, by banning him from posting comments on the Official Facebook Page for Senator Uecker and deleting comments previously posted. Plaintiff, Robert Anthony Fambry ("Plaintiff Fambry") is a constituent of Ohio Senate District 14. The Defendant, Joseph "Joe" Uecker ("Defendant"), is the Ohio Senator for District 14.

## JURISDICTION AND VENUE

2.  This action arises out of the First and Fourteenth Amendments to the United States Constitution.

3.  This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.  The Court is empowered to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims under 28 U.S.C. § 1367 on the grounds that they are so related to the federal claims, over which the Court has original jurisdiction, that they form part of the same case or controversy.

5.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  Defendant lives in and represents constituents found within the Southern District of Ohio. Additionally, the acts giving rise to this action occurred within this district and venue. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6.  Plaintiff Fambry is a resident and citizen of the District 14 of Ohio, which includes Clermont County, Ohio.  Plaintiff Fambry has taken an interest in politics as a concerned citizen.

7.  Defendant is currently, and at all times pertinent to the claims herein, has been the Ohio Senator for District 14.  He is sued in his individual and official capacity.

## STATEMENT OF FACTS

8.  Plaintiff incorporates Paragraphs 1-8 by reference.

9.  Defendant is the administrator or otherwise exercises control over a public Facebook Page in his capacity as Senator for Ohio District 14 ("Official Page").   The web address for the page is https://www.facebook.com/SenUecker.

2

10. The "About" section of the Official Page indicates that Defendant is a Government Official and includes a professional headshot photograph of Defendant. Contact information listed on the Official Page includes Defendant's official government email address, as well as his office number at the Ohio Senate.

11. The Senator's Official Website Opening Page has a direct link to his Official Facebook Page.  Defendant invites constituents and the public in general to contact him, among other ways, through his Official Facebook Page.

12. On information and belief, Ohio State Senators and House Representatives regularly use Facebook as a forum to communicate with constituents and the public regarding legislative matters and other matters of public import.

13. Defendant's Official Page does not include a disclaimer or otherwise provide any limitation as to the topics or subject matter that may be discussed, what speech is subject to removal, or what online conduct may result in being banned.

14. Defendant uses this Official Page to share legislative updates and political goals and accomplishments with the public.

15. The Facebook Terms of Service stipulate that users will not "post content or take any action on Facebook that infringes on or violates someone else's rights or otherwise violates the law."  At all relevant times, Plaintiff complied with this admonition.

16. Any person, including those who do not have Facebook accounts, may access the Official Page and view content.  The Official Page is effectively a public forum as it has been set up to engage residents of Senate District 14 and members of the public generally in discourse regarding Ohio legislative matters and other matters of public import.

17. Any Facebook user who "follows" Defendant's Official Page will see Defendant's posts on his or her personal Facebook timeline.

18. Administrators of Official Pages have the ability to manage their Page.  This includes publishing comments for public comment, deleting the published comments of others, and/or banning users from the Official Page.  Banning a user does not make the Official Page inaccessible to the banned user, but instead, fully removes the banned user's ability to publish a comment to any post or engage in discussions on the Official Page.  A banned user is effectively silenced.

19. Defendant also operates a personal Facebook Page ("Personal Page").  The Personal Page is also named "Joe Uecker." Defendant uses the Personal Page to share personal news.

20. Administrators of Personal Pages have the ability to manage that Page. This includes blocking users from their Personal Page.  Blocking a user makes the Personal Page inaccessible to the blocked user.

21. Upon information and belief, Defendant has "linked" his Official Page and his Personal Page so that he can operate and manage each page using a single Facebook login.  Because the Pages are linked, Defendant can toggle back and forth between his Official Page and his Personal Page under the same Facebook profile with just two clicks of the mouse.  Defendant is the administrator for both his Official Page and his Personal Page or otherwise exercises control over those Facebook sites.

22. When a user has linked his Pages, comments published to a Facebook post can be published from either his Official Page or his Personal Page.

23. Defendant had the ability to toggle between commenting from his Official Page or his Personal Page each time he published a comment on the Official Page.  Defendant's official

4

headshot accompanies comments made from Defendant's Official Page. Defendant's personal profile picture accompanies comments made from Defendant's Personal Page.

24.  Plaintiff Fambry, a constituent of District 14, began to "follow" Defendant's official Facebook Page in 2016.

25.  When a Facebook user "follows" his or her elected representatives, a small "badge" icon appears to the right of the user's name when posting comments.  This badge indicates that the user is verified as a constituent of that elected official's district.

26.  On December 28, 2018, Defendant posted on his Official Page a comment that states, in relevant part: "… I regret that despite my vote to override the Governor's veto of legislation to end abortions after there is a detectable heartbeat, the Senate was only able to come up with 19 votes, one short of a successful override. It is possibly the strongest piece of pro-life legislation I have had the privilege to work on in my fourteen years in the legislature. I look forward to once again taking up this issue in the 133rd General Assembly under a new Governor."

27.  After both supportive and critical reactions and comments were posted in response to the December 28 post, Defendant posted a comment on his Official Page, stating, "Sorry your judgmental beliefs are bothering you. I'm just trying to save babies from being killed."

28.  Plaintiff Fambry directly replied to this comment, saying, "Joe Uecker no babies are being killed, you're flat out wrong.  Science has shown this. Also, are you not familiar with Roe V Wade? That bill was 100% unconstitutional."

29.  Defendant replied to Plaintiff Fambry's comment, saying, "Anthony Fambry – loose [sic] the emotions, get your facts straight then come back to the conversation."

30. Plaintiff Fambry replied to Defendant's comment by posting the following comment: "I believe I've been quite courteous here, can you answer the question Joe?" Other users continued to post comments, both in support of and against the heartbeat bill.

31. Defendant replied to the numerous comments by posting on his Official Page the following comment: "Now that is where you are COMPLETELY incorrect! Science agrees that life begins at conception. Get your facts straight before you begin spewing your liberal diatribes."

32. Plaintiff Fambry then replied to Defendant's comment by posting the following comment of Defendant's Official Page: "… Brain activity doesn't start until 6 weeks in. From contraception [sic] to then, that isn't 'life.' Yes it is the beginning of a beautiful process called life, but it isn't life itself. You never answered the question, are you familiar with Roe V Wade?"

33. After Plaintiff posted his comments on the Defendant's Official Page, Defendant unilaterally banned Plaintiff from the Official Page. Although Plaintiffs were and still are able to view the Official Page, they were blocked from publishing comments and engaging in discussion on matters of public concern on that public forum. The "Comment" box was altogether removed from Plaintiff's personal Facebook interfaces when they accessed the Official Page, preventing any comments being posted by Plaintiff on Defendant's Official Page.

34. Plaintiff also noticed the comments he had posted just minutes prior on the Official Page (specified above) were no longer visible on the Official Page, as they had been hidden or deleted by Defendant or at Defendant's direction.

35. Plaintiff also observed that other comments previously published by other Facebook users that similarly challenged Defendant's stance on the heartbeat bill were no longer on the Official Page, as they too had been hidden or deleted.

36. On information and belief, one or more other individuals who posted critical comments on Defendant's Official Page were also banned or blocked from posting comments on that site.

37. Based on his observation of the site, Plaintiff does not believe any comments supporting Defendant's view have been similarly deleted.

38. Defendant's ban of Plaintiff has continued to date, preventing Plaintiff from commenting on matters of public import or otherwise engaging in public discourse on such matters on the Senator's Official Facebook Page.

39. In banning Plaintiff and others from his Official Page and in deleting comments that were critical of comments posted by Defendant on that site, Defendant's decision to ban some individuals, including Plaintiff, and deleting some comments from the Official Page, discriminated against Plaintiff and other users on the basis of their viewpoints and the content of their comments.

40. At no time did Defendant provide Plaintiff with notice of the ban or a statement of the reasons therefor, nor did Defendant afford Plaintiff any opportunity to contest the ban.

41. Defendant's intentional deletion of comments and the subsequent ban of Plaintiffs from Defendant's Official Facebook Page has denied Plaintiff his right to free speech in a public forum on matters of public concern, as well as their right to due process.

42. At all relevant times Defendant was and is acting under color of state law by virtue of his conduct as a State Senator is establishing and controlling his Official Page in the manner described above.

43. At all relevant times, Defendant conduct as described herein occurred in violation of rights clearly established by the decisions of the Supreme Court and the Sixth Circuit and other relevant jurisprudence.

44. As a direct and proximate result of Defendant's conduct as described herein, Plaintiff has suffered loss of his constitutional right to freely express himself and suffered serious distress and humiliation all to Plaintiff's damage in an amount to be determined by the evidence at trial.

## COUNT I – 42 U.S.C. §1983

### Violation of Plaintiffs' Right to Freedom of Speech Guaranteed by the First Amendment of the United States Constitution

45. Plaintiff incorporates all factual allegations set out above.

46. Defendant encouraged, solicited, and allowed public comments and discussions on his Official Facebook Page, including through his official Senatorial website.

47. The social media forum as established and operated by Defendant was and a public forum or designated public forum.  Citizens' views, comments, and opinions expressed thereon are expressions of political speech protected by the First Amendment of the United States Constitution.

48. The deletion of Plaintiff's comments on the Official Page is viewpoint discrimination and done in retaliation for Plaintiff's lawful expression of their political views and criticism of Defendant's actions.  Plaintiff's right to join and participate in discussions in the

public forum established by the Defendant, subject to reasonable rules not inconsistent with the Constitution, is protected by the First Amendment of the United States Constitution as applied to the states by the Fourteenth Amendment.

49. Deleting Plaintiff's comments from Defendant's Official Page, as described above, because of the views expressed therein, constitutes content and viewpoint discrimination for which there is no compelling state interest or justification.

50. The banning of Plaintiff from participation from all public discourse on Defendant's Official Page, as described above, constitutes prior restraint of expression, for which there is no compelling state interest or justification.

51. Defendant either personally made or ratified the decision to undertake the acts against Plaintiff by banning Plaintiff from Defendant's Official Page, deleting comments and failing to restore their previously published comments.

52. Defendant's conduct acting under color of state law, has violated, and continues to violate, Plaintiff's right of free speech protected by the First Amendment.

53. The violation of Plaintiff's free speech is continuing and will continue without intervention of this Court.

54. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer irreparable harm.

## COUNT II-42 U.S.C. §1983

### Violation of Plaintiffs Due Process Rights Guaranteed by the Fourteenth Amendment of the United States Constitution

55. Plaintiff incorporates all factual allegations set out above.

56. Defendant deleted Plaintiff's constitutionally protected speech on his Official Page in the manner described above without prior notice and without providing any opportunity to respond or contest the decision.

57. Defendant provided no notice to Plaintiff that he had been banned from the public forum or that his protected speech had been deleted or hidden.

58. Plaintiffs' due process rights guarantee notice and an opportunity to be heard before he or she is deprived of any significant liberty or property interest.

59. Defendant's acts were willful, wanton, and in reckless disregard of Plaintiffs' rights.

60. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiffs have been irreparably injured in the manner described above.

## COUNT III- 42 U.S.C.§ 1983

**Violation of Plaintiff's rights to Freedom of Speech Guaranteed by the
First Amendment of the United States Constitution**

61. Plaintiff incorporates all factual allegations set out above.

62. The posting of the comment by Plaintiff on December 28, 2018 in polite opposition to Defendant's post on the subject of his "heartbeat bill" was protected political speech.

63. The immediate banning of Plaintiff from Defendant's Facebook site, and Defendant's deleting of Plaintiff's comments was retaliatory, and done for the sake of censuring the speaker and his protected speech.

64. Such speech retaliation is in violation of Plaintiff's rights under the First Amendment to speak and have his speech heard.

**WHEREFORE,** Plaintiff demands the following relief:

A.  A temporary restraining order, preliminary and permanent injunction, enjoining Defendant from continuing to ban or block Plaintiff from Defendant's Official Page or posting comments thereon and affirmatively requiring Defendant to restore Plaintiffs deleted comments to the comment section of Defendant's Official Page.

B.   An award of compensatory damages in an amount to be determined by the evidence at trial.

C.  An award of attorney fees and costs and all other relief to which Plaintiff appears entitled.

Respectfully submitted,

*/s/ Robert B. Newman* _____
ROBERT B. NEWMAN (0023484)
215 E. 9th St., Ste. 650
Cincinnati, Ohio 45202
(513) 639-7000
Bob@RobertNewmanAttorney.com

/s/*Michael J. O'Hara* _____
MICHAEL J. O'HARA (OH Bar No. 0014966)
O'HARA, TAYLOR, SLOAN & CASSIDY
25 Town Center Boulevard, Suite 201
Covington, Kentucky 41017
(859) 331-2000
FAX: (859) 578-3365
mohara@oharataylor.com

**ATTORNEYS FOR PLAINTIFFS**

**JURY DEMAND**

Pursuant to Federal Rule 38, Plaintiff herewith demands that all issues of fact in the foregoing Complaint be tried to a jury.

/s/*Robert B. Newman* _____

11

12