**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**
**AT CINCINNATI**
CASE NO. _____

| | | |
|---|---|---|
| **ROBERT ANTHONY FAMBRY** | : | |
| **4164 Long Lake Dr., Apt. 15316** | : | |
| **Batavia, OH 45103** | : | |
| | : | **Judge:** |
| | : | **Magistrate Judge:** |
| **PLAINTIFF,** | : | |
| | : | |
| **v.** | : | |
| | : | **PLAINTIFF'S MOTION FOR** |
| **JOSEPH UECKER, in his** | : | **TEMPORARY RESTRIAING** |
| **Individual and Official Capacity** | : | **ORDER AND PRELIMINARY** |
| **as Senator of Ohio, District 14** | : | **INJUNCTION** |
| **1 Capitol Square, 2nd Floor** | : | |
| **Columbus, OH 43215** | : | |
| | | |
| **DEFENDANT.** | | |

_____

### MOTION

Comes Plaintiff Robert Anthony Fambry, by counsel, and pursuant to Rule 65 (a) and (b) of the Federal Rules of Civil Procedure, move the court to enter a temporary restraining order and preliminary injunction enjoining Defendant Joe Uecker from banning Plaintiff from posting comments on Defendant's official Senate Facebook page and further requiring Defendant to restore to that site comments posted by Plaintiff but previously deleted by Defendant.

As grounds, Plaintiff states that the actions of the Defendant in banning Plaintiff from posting comments on Defendant's official Senate Facebook page and deleting comments previously posted by Plaintiff violates Plaintiff's fundamental right to free expression as protected by the First Amendment to the United States Constitution and continues to cause him irreparable harm. Issuance of the requested injunction will cause

no harm to Defendant or the public and will in fact advance the public interest in the open exchange of ideas. Delay in issuing the requested injunction will cause immediate and irreparable harm.

For these reasons and for reasons more fully set forth below, Plaintiff urges the Court to issue the requested injunction as expeditiously as possible.

Respectfully submitted,

/s/ Robert B. Newman
ROBERT B. NEWMAN (0023484)
215 E. 9th St., Ste. 650
Cincinnati, Ohio 45202
(513) 639-7000
Bob@RobertNewmanAttorney.com


/s/Michael J. O'Hara
MICHAEL J. O'HARA (OH Bar No. 0014966)
O'HARA, TAYLOR, SLOAN & CASSIDY
25 Town Center Boulevard, Suite 201
Covington, Kentucky 41017
(859) 331-2000
FAX: (859) 578-3365
mohara@oharataylor.com
**ATTORNEYS FOR PLAINTIFFS**


**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

Plaintiff Anthony Fambry lives in Ohio's Senate District 14, the District represented by Defendant Senator Joe Uecker.  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendant's action in banning Plaintiff from posting comments and

engaging in conversations on his official Senatorial Facebook site violate Plaintiff's rights secured by the First Amendment to the United States Constitution. Because that ban remains in effect, and because a violation of rights secured by the First Amendment is, as a matter of law, irreparable, Plaintiff has moved for a temporary restraining order and preliminary injunction pursuant to Rule 65(a) and (b). He submits this memorandum in support of his Motion.

## II.    STATEMENT OF FACTS

Defendant Joe Uecker is an Ohio State Senator, representing Ohio's Senate District 14. Plaintiff contends that Defendant Uecker created an official Facebook Page for his senatorial office and invited comments on issues of the day from the general public, including his constituents. The Senator's Official Website Home Page[1]  has a direct link to his official Facebook Page.[2] On his Senate Website, Senator Uecker invites constituents and the public in general to contact him, among other ways, through his official Facebook page, by creating a link to his official Facebook page on his Senate Contact page.[3]  Plaintiff Anthony Fambry is a constituent of Senator Uecker's who did, in fact, contact him through Defendant's Official Facebook page, until those efforts were unilaterally banned by or at the direction of Senator Uecker.

On December 28, 2018, Mr. Fambry began to post comments[4] on Sen. Uecker's official Facebook Page that were intended to respectfully respond to comments Defendant Uecker had posted on both on his Official Facebook Page[5] and on his Official Website

---

[1] Pl. Ex. 1 - Senator's Official Website Home Page
[2] Pl. Ex. 2 - Official Facebook Page Linked from Website, Senate District 14
[3] Pl. Ex. 3 - Website Contact Page
[4] Pl. Ex. 4 – Fambry Comments Posted on Uecker's Official Facebook Page
[5] Pl. Ex. 5 – Sen. Uecker Facebook Comment Re Heartbeat Bill

News page.[6] Specifically, Plaintiff posted his criticism and counterpoint to Senator Uecker's support of Ohio's "heartbeat bill," which outlawed abortion at the point in gestation where there is a "detectable heartbeat." Plaintiff expressed his disagreement by posting comments on the Senator's official Facebook Page reminding Senator Uecker through a series of courteous posts that neither science nor the Supreme Court's decision in *Roe v. Wade* would justify the Senator's vote in favor of the "heartbeat bill." (See Pl. Ex. 4 – Fambry Comments). There were many posts contributing to the discussion, some supportive and some critical.[7]

Plaintiff continued posting his responses criticizing Sen. Uecker's position and replying to the Senator's comments supporting the bill. Within a few hours, Sen. Uecker deleted Plaintiff's posted comments and banned or otherwise blocked Plaintiff from publishing any further posts on the Senator's official Facebook site.[8] While he allowed some critical posts to remain, it does not appear that the Senator banned or otherwise blocked the posts of any individual who posted favorable comments on the Senator's official Facebook Page.[9] That ban has continued to date, preventing Plaintiff from commenting on matters of public import or otherwise engaging in public discourse on such matters on the Senator's Official Facebook page.[10] That ban appears to affect at least two other individuals: Keri Pinger and Kyle Heimbrock. Their posts are included in Pl. Ex. 4, screen shots of comments on the Senator's official Facebook site before deletion,

---

[6] Pl. Ex. 6 – Sen. Uecker Website News Page Comment
[7] Pl. Ex. 7 – Screenshot of Comments After Deletion of Fambry Comments
[8] Pl. Ex. 8 – Fambry Declaration ¶¶ 4-11.
[9] See Pl. Ex. 7, showing comments posted after deletion of Fambry's comments.
[10] Pl. Ex. 8 ¶¶ 12-15.

but do not appear in Pl. Ex. 7, screenshots of comments currently posted on the Senator's official Facebook site.

## III.   ARGUMENT

This Court has previously set out the standard for granting a temporary restraining order and a preliminary injunction:

> In determining whether to grant or deny a temporary restraining order, this Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc) (internal quotation marks omitted).

*Planned Parenthood of Greater Ohio v. Hodges*, 188 F. Supp. 3d 684, 689 (S.D. Ohio 2016); *and see, Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006); *and Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Co.*, 274 F.3d 377, 400 (6th Cir. 2001). *cert. denied*, 535 U.S. 1073 (2002)). These considerations "are factors to be balanced, not prerequisites that must be met." *U.S. v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Washington v. Reno*, 35 F.3d 1093, 1098 (6th Cir. 1994)). In First Amendment cases, such as here, the "crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because . . . the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (internal quotations omitted) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000) (*overruled on other grounds*, *City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774 (2004)).

Here, a temporary restraining order and preliminary injunctive relief are appropriate because each of these factors weigh in favor of issuing the injunction. Plaintiff demonstrates below that he is substantially likely to succeed on the merits of his First Amendment claims and an injunction would prevent what the courts consider immediate and irreparable harm as a matter of law. Moreover, the injunction would cause no harm to Defendant or others. Furthermore, because "it is always in the public interest to prevent the violation of a party's constitutional rights," issuance of a preliminary injunction would serve the public interest. *Deja Vu of Nashville, Inc. v. Metro. Govt. of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001) (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

**A. Plaintiff Is Likely To Succeed On The Merits Of His First Amendment Claim That Defendant Unlawfully Deleted Fambry's Comments And Banned Plaintiff From Posting Comments And Engaging In On-Line Conversations Regarding Matters of Public Importance On The Senator's Official Facebook Page.**

The essential elements of a § 1983 claim include the following: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) such conduct must have resulted in a deprivation of rights, privilege, or immunities secured by the Constitution or laws of the United States. *Savoie v. Martin*, 673 F.3d 488, 493 (6th Cir. 2012). As demonstrated below, Defendant's conduct, in fact, occurred under color of state law and constituted prior restraint of lawful expression and otherwise deprived Plaintiff of rights secured by the First Amendment to the United States Constitution, entitling Plaintiff to immediate injunctive relief.

### 1. Defendant Is Acting Under Color Of State Law In Banning Plaintiff From Posting Comments On Defendant's Official Senatorial Facebook Page.

Defendant Uecker established the Facebook Page in question as the Official Facebook Page for his office as Senator for District 14. (Pl. Ex. 2 –Facebook Page of Senator Uecker). Defendant invited comments from the public on matters of public import through his official Facebook page. This is apparent from his Senate website which has two (2) direct links to his Senate Facebook page: one on the Home page (Pl. Ex. 1) and one on the Contact page. (Pl. Ex. 3). Defendant regulated that site by controlling those who would be permitted to join in discussions regarding public issues. Ultimately, Senator Uecker banned Plaintiff and others, with whose comments he disagreed, from commenting on matters of public importance or otherwise engaging in public discourse on such matters on his Senatorial Facebook Page. In so doing, Defendant was acting, and continues to act under color of state law for purposes of liability under 42 U.S.C. § 1983.

In conducting a state action analysis, "[t]he key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Leuthy v. LePage*, 2018 WL 4134628, at *8 (D. Me. Aug. 29, 2018), *motion to certify appeal denied,* 2018 WL 4955194 (D. Me. Oct. 12, 2018), *quoting, Martinez v. Colon,* 54 F.3d 980, 987 (1st Cir. 1995). "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). One indication that defendant has acted under color of state law is that the defendant's challenged action was "performed while the [defendant] [was] acting, purporting, or pretending to act in the performance of his or her official duties." *See Anderson v.*

7

*Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (internal quotation and citation omitted).  In this case there can be no serious question that Defendant set up and managed the Facebook site in question as an official site for his Office of State Senator for District 14 and opened it to regular public comment.  (See e.g., Pl. Exs. 1-3)

In *Davison v. Randall*, 2019 WL 114012, at *7 (4th Cir. Jan. 7, 2019), *as amended* (Jan. 9, 2019), the Fourth Circuit addressed this identical issue, concluding that a public official's conduct in establishing and controlling access for a governmental Facebook Page constituted action under color of state law for purposes of liability under 42 U.S.C. § 1983.  The Court noted the following:

> "The Chair of the County Board of Supervisors" created and administered the Chair's Facebook Page to further her duties as a municipal official. She used the Chair's Facebook Page "as a tool of governance," *id*. at 713: through the Chair's Facebook Page, [the Chair] provides information to the public about her and the Loudoun Board's official activities and solicits input from the public on policy issues she and the Loudoun Board confront.

*Id.*

The District Court reached the same conclusion in *Garnier v. Poway Unified School District*, 2018 WL 2357151, at *4 (S.D. Cal. May 24, 2018).  In that case, plaintiffs alleged that the defendants, members of the local school board, used their private Facebook pages or Twitter account to disseminate information in their official capacities about school district matters.  Plaintiffs were blocked from the Defendants' Facebook pages.  One of the plaintiffs was also blocked from the School Board member's Twitter account.

> The plaintiffs alleged that the defendants, all maintain Facebook and other social-media websites in order to communicate with the public about official PUSD matters. Plaintiffs also allege that Zane's Facebook website has been described as the official page for T.J. Zane, [PUSD] Board Member, to promote public and political information.  MOR's Facebook website has include[s] a 'Political Info'

8

> section and list[s] her Current Office as Board of Education, President, Poway Unified School District; the website also identifies her as a Government Official. Additionally, the copy of Zane's Facebook page that is attached to the Complaint shows a picture of the "Poway Unified School District" sign, further suggesting a close connection between Zane's personal account and his position as a board member . . .

*Id.* at *4. (Internal quotes and citations to Complaint omitted). The Court found those allegations sufficient to allege a First Amendment deprivation under color of state law: "the Court finds the Complaint adequately alleges Defendants acted under color of law when they blocked Plaintiffs from posting messages on their Facebook and Twitter accounts." *Id.*

The evidence submitted in support of this Motion confirms that Defendant Uecker engaged in precisely the same kind of conduct that triggered the state action rulings in *Davison* and *Garnier*. The same conclusion is compelled by the evidence here.

## 2. Defendant's Conduct Violated Plaintiff's Right To Free Expression As Protected By The First Amendment.

The First Amendment's protection of speech applies not only to Congress, but also to the states by operation of the Fourteenth Amendment's due process clause. *Gitlow v. New York*, 268 U.S. 652, 666 (1925). As demonstrated below, Senator Uecker's actions in deleting Plaintiff's comments from the Senator's Facebook page and banning Plaintiff from future participation in political discussion on that site contravenes the First Amendment.

### a. Defendant's Facebook Page Is A Public Forum Or Designated Public Forum And His Banning of Plaintiff Discriminates On The Basis Of Viewpoint In Contravention Of the First Amendment.

It is beyond reasonable debate that the First Amendment's speech protections extend to online speech occurring on social media sites. "In short, social media users employ these websites to engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought.'" *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017), (quoting *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997)). *See also, Bland v. Roberts*, 730 F.3d 368, 386 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (using Facebook's "like" button constitutes both pure speech and symbolic expression under the First Amendment).[11] As the Sixth Circuit has made clear, "[e]ven if public fora are not limited by their historic confines, these places still must, by definition, be 'open for expressive activity regardless of the government's intent.'" *Putnam Pit, Inc. v. City of Cookeville, Tenn.*, 221 F.3d 834, 843 (6th Cir. 2000), *quoting, Arkansas Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 678 (1998).

Moreover, "[a] fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham*, 137 S. Ct. at 1735.  It is this principle of political give and take that Defendant's conduct undermines here.

Defendant Uecker has developed and manages an official Facebook page specifically for the purposes of imparting information and opinions to the public and

---

[11] *See also, United States v. Kokinda,* 497 U.S. 720, 727 (1990) ("The mere physical characteristics of the property cannot dictate forum analysis.")

accepting comments from constituents and others regarding matters of political significance. As noted above, that Facebook site is linked directly to his official Senate website, both through its Home page and its Contact page. (See Pl. Exs. 1-3)  In so doing the Senator invites live discourse on his Facebook page between the Senator and members of the public, like Plaintiff, who desire to so engage, providing a variety of views and opinions on matters of public significance.

To determine whether a "public forum" has been created, this Court should consider: "[f]irst, . . . whether the government has made the property generally available to an entire class of speakers or whether individual members of that class must obtain permission in order to access the property," and "[s]econd, . . .  whether the exclusion of certain expressive conduct is properly designed to limit the speech activity occurring in the forum to that which is compatible with the forum's purpose." *Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834, 843-44 (6th Cir. 2000) (internal quotation marks and citation omitted).

Consistent with *Putnam,* Defendant Uecker's official Facebook page must be considered a public forum for purposes of determining the scope of rights afforded by the First Amendment. *Id.*  The nature of Senator Uecker's Facebook page is no different in kind for constitutional purposes than the Facebook pages and Twitter accounts of the School District members in *Davison v. Randall*, which the Fourth Circuit found to constitute a public forum. *Id.,* 2019 WL 114012, at *8-9.  As the Court of Appeals explained,

> a governmental social media page—like the Chair's Facebook Page—**constitutes a public forum**, aspects of the ***Chair's Facebook Page bear the hallmarks of a public forum.*** Randall "intentionally open[ed the public comment section

of the Chair's Facebook Page] for public discourse," *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), inviting "ANY Loudoun citizen" to make posts to the comments section of the Chair's Facebook Page—the interactive component of the page—"on ANY issues, request, criticism, complement or just your thoughts," J.A. 455. Randall placed no restrictions on the public's access to the page or use of the interactive component of the Chair's Facebook Page. And, in accordance with Randall's invitation, the public made numerous posts on matters of public concern.

*Id.* at *8. (Emphasis added).  Indeed, Senator Uecker's complete control over his official Facebook page further supports the conclusion that it is considered a "public forum." *Davison v. Randall*, 2019 WL 114012, at *10; *and see*, *Knight First Amendment Institute v. Trump*, 302 F.Supp.3d 541, 566–67 (S.D.N.Y. 2018)(holding that the interactive component of the President's Twitter account constituted public forum because the President and his advisors "exercise control over various aspects of the ... account," including the power to block other users from accessing the account).

A designated public forum is one in which the government intentionally "opens a piece of public property to the public at large, treating as if it were a traditional public forum." *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010).  That is precisely what Senator Uecker did here by inviting public comments on his Facebook page through his Senate Website.  The invitation on the Senate Website's Contact page does not in any way limit the forum – it simply invites all public comment through Senator Uecker's Facebook page.  (See Pl. Exs. 2 and 3).  Likewise, the official Facebook page itself is not limited in any way- any member of the public may access the page, view its content, and engage in discussion on matters of public concern.  At the very least, Defendant's official Facebook page is a "designated public forum" to which the same constitutional constraints apply.

> We have held that a government entity may create "a designated public forum" if government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose. [Citation omitted] Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum.

*Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469–70 (2009).

The Supreme Court mandates that, in a designated public forum, any content-based or speaker restriction is, like a traditional public forum, subject to strict scrutiny review. "If the government excludes a speaker who falls within the class to which a designated public forum is made generally available, its action is subject to strict scrutiny." *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 677 (1998). Consequently, any ban must be justified only by a showing of a compelling state interest and narrowly tailored to advance that interest. *Seum v. Osborne*, ____F.Supp.3d ____, 2018 WL 4691332, *7 (E.D. Ky. 2018).

Here there can be no doubt that Defendant's actions against Plaintiff constituted both speaker and viewpoint discrimination. This is the inescapable conclusion compelled by the evidence showing that Defendant targeted those expressing criticism of Defendant's position on the heartbeat bill and leaving undisturbed those expressing support. As demonstrated below, such conduct cannot weather a strict scrutiny analysis.

### b. Banning Plaintiff From Senator Uecker's Facebook Page And Deleting His Comments Will Not Survive Strict Scrutiny Review, As It Neither Serves A Compelling Government Interest Nor Is It Narrowly Tailored To Serve Any Such Purpose As Required By The First Amendment.

Defendant's unilateral actions in banning Plaintiff from his Senatorial Facebook page and deleting his comments cannot be justified by any legitimate state interest, much

less a compelling one. The Supreme Court has explained the underlying principle that necessitates the extraordinary constraint placed on the government's effort to limit political speech.

> Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.

*Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800, 105 S. Ct. 3439, 3448, 87 L. Ed. 2d 567 (1985). No "compelling interest" of Senator Uecker or the State of Ohio, nor any legitimate governmental interest can explain Plaintiff's ban and the deletion of his comments from Defendant's Facebook page forum. Indeed, Defendant's actions here are precisely the constitutionally offensive conduct found to contravene the First Amendment by the Fourth Circuit in *Davison*.

In *Davison,* the Chair of the County Board of Supervisors set up a Facebook page, inviting the public to post comments and reply to comments posted by others regarding matters of import within the county. Like the Defendant here, the Chair of the county board of supervisors in *Davison* blocked the plaintiff from her Facebook site, preventing her ability to engage in public discussion. "Put simply, Randall unconstitutionally sought to 'suppress' Davison's opinion that there was corruption on the School Board." *Id.* 2019 WL 114012, at *12. The Court explained its holding,

> Upon concluding that interactive component of the Chair's Facebook Page amounts to a public forum, we would normally need to determine whether it constitutes a traditional public forum or designated or limited public forum. In the present case, however, we need not decide that question ***because Randall's ban of Davison amounted to "viewpoint discrimination," which is "prohibited in all forums."***

*Id.* (Emphasis added). *Cf., Seum v. Osborne*, *supra,* 2018 WL 4691332, where the plaintiff challenged his ban from the third floor of the Kentucky Capitol Building by the Speaker of the Kentucky House of Representatives and the Director of the Legislative Research Commission. The Court held, "the unequivocal and permanent ban of [plaintiff] from the third floor of the Capitol Annex suggests this restriction is not narrowly tailored to serve that state interest." *Seum v. Osborne*, 2018 WL 4691332, at *7 (E.D. Ky. Sept. 8, 2018).

So it is here. The deletion of Plaintiff's comments regarding the "heartbeat bill" and the banning of Plaintiff from Uecker's official Facebook page because Senator Uecker objected to Mr. Fambry's comments regarding the merits of that bill is no less violative of the First Amendment than it was in *Davison*. *See also Barna v. Bd. of Sch. Directors*, 143 F.Supp.3d 205, 216 (M.D. Pa. 2015) (permanent ban from attending school board meetings and entering school property for engaging in disruptive and threatening behavior at school board meeting "not sufficiently narrowly tailored to serve an important governmental interest"); *Cyr v. Addison Rutland Supervisory Union*, 60 F.Supp.3d 536, 548 (D. Vt. 2014) ("categorical ban of a single individual from open school board meetings . . . is not narrowly tailored"); *Brown v. City of Jacksonville*, No. 3:06-cv-122, 2006 U.S. Dist. LEXIS 8162, at *12 (M.D. Fla. 2006) (three-month ban from attending City Council meetings "not . . . 'narrowly tailored' to achieve the significant governmental interest of running the meetings efficiently, while successfully preventing her disruptive behavior."). *See also Huminski v. Corsones*, 396 F.3d 53, 92 (2d Cir. 2005) ("categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review" for a nonpublic forum).

Defendant's actions in deleting Plaintiff's comments and banning him from the Senator's Facebook page neither advance any legitimate (much less compelling) government interest nor is it "narrowly tailored" to serve any such interest. Thus, Defendant cannot meet its burden of proof on this element. Plaintiff has accordingly demonstrated that he is likely to succeed on the merits of this First Amendment claim.

### c. Defendant's Conduct Constitutes Unlawful Prior Restraint.

Banning Plaintiff from Defendant's Official Facebook page necessarily prevents him from posting any comments on the site in the future. Consequently, such conduct constitutes prior restraint of speech which comes to this Court with a presumption of illegality.

> A "prior restraint" exists when the exercise of a First Amendment right depends on the prior approval of public officials. Any system of prior restraints comes to this Court bearing a heavy presumption against its constitutional validity.

*Deja Vu of Nashville, Inc., supra,* 274 F.3d at 400. (Internal quotes and citations omitted), citing, *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 889 (6th Cir.2000). Unilateral action by a government official to prohibit speech finds no support in the jurisprudence of either this Court or the Supreme Court. "The settled rule is that a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). In this case, the ban was unilateral and summary, thus, accompanied by no "procedural safeguards" of any kind.

Defendant's banning of Plaintiff here is analogous to the type of prior restraint held unconstitutional by the Sixth Circuit in *City of Paducah v. Investment Entertainment*,

791 F.2d 463 (6th Cir. 1986). There, the Court ruled that an anti-obscenity ordinance went too far in that it "essentially prevent[ed] the offending business from engaging in future distribution of protected, non-obscene material anywhere within the City of Paducah." *Id.* at 470. The ordinance, the Court concluded, sought to "control future expression." *Id.* For that reason, the Court held the statute to constitute an unlawful prior restraint. *Id.*

The same form of prohibited prior restraint is even more evident in this case. Defendant continues to ban Plaintiff's comments and thereby prevent future expression by him. There clearly is no authority to support the unilateral action taken by Defendant in banning of Plaintiff from Defendant's official Senate Facebook page. Banning Plaintiff from Defendant's Official Facebook page necessarily prevents him from posting any comments and consequently controls future expression and discourse with others whose comments have not been banned. [12]

As Defendant cannot survive a strict scrutiny review of his actions in banning future expression by Plaintiff on the Senator's official Facebook page, Plaintiff has met his burden of showing he is likely to succeed on this element of his First Amendment claim.

---

[12] To the extent Defendant attempts to argue that Plaintiff has not been banned from the site because he is still able to view the Senator's Facebook page, he fails to appreciate the reach of the First Amendment's umbrella. First, his comments are banned and thus inconsistent with the prohibition on prior restraint. Second, Plaintiff as a person desiring to exchange political views with other constituents, has been effectively banned. That is, Plaintiff has been rendered invisible to the members of the public who view the site and seek to engage others in political discourse. Thus, in a very real sense, Plaintiff has been banned.

### d. Defendant's Conduct Constitutes Unlawful Retaliation Under the First Amendment.

There can be little doubt that Defendant acted against Plaintiff because he was offended by the comments Plaintiff expressed in his postings. Removing Plaintiff's comments from Defendant's official Facebook page and barring Plaintiff from that site because Defendant disagrees with the sentiment expressed by Plaintiff in his comments is itself a violation of rights guaranteed to Plaintiff under the First Amendment.

To establish a claim of First Amendment retaliation a plaintiff must prove "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [plaintiff's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (*en banc*) ). "Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If Plaintiff makes such a showing, the burden shifts to the Defendant to show that the same action would have been taken absent plaintiff's exercise of protected conduct. *Id.; and see, Seum v. Osborne, supra*, 2018 WL 4691332, at *8.

First, there is no question that Plaintiff engaged in protected political speech. "[I]nteractive communication concerning political change" "is core political speech" and that "First Amendment protection for such interaction, we agreed, is at its zenith." *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186-87 (1999) (internal quotes omitted); *Seum v. Osborne*, *supra,*2018 WL 4691332, at *8.

18

Nor can there be any dispute that Defendant has taken "adverse action" against Plaintiff, i.e., he has been banned from the Facebook site and his comments deleted. Such action, not only chills political speech, it affirmatively prevents it. Such is enough to demonstrate adverse action. *Cf., Seum v. Osborne, supra,* 2018 WL 4691332, at *8 (finding the Speaker of the House banning of the plaintiff from the third floor of the state capitol building constitutes adverse action).

Additionally, Plaintiff provides compelling evidence of retaliatory conduct and motive. Mr. Fambry's comments that were originally posted on Defendant's official Facebook page were critical of Defendants position on the heartbeat bill. Defendant's responsive comments were dismissive of Plaintiff and falsely accused him of being emotional and told him to "get his facts straight ***then come back to the conversation."*** (See, Fambry Declaration, Pl. Ex. 8, ¶7; Pl. Ex. 4, Screenshots of Comments Prior to Deletion). It is undisputed that after that exchange, Defendant Uecker made certain that Plaintiff would not be coming "back to the conversation."

Defendant's intent to retaliate is further evidenced by his taking similar action against at least one other person who posted critical comments.[13]  Plaintiff confirms in his Declaration that the comments of others who were critical of Defendant's position on the heartbeat bill were also deleted and that no such censorship occurred with supportive comments. (See Pl. Ex. 8. ¶ 13). Such provides compelling evidence of Defendant's retaliatory motive in banning Plaintiff and deleting his critical postings while leaving undisturbed supporting comments.

---

[13] Plaintiff has attempted unsuccessfully to obtain a list of others who have been blocked. Counsel believes that others who have posted comments critical of Senator Uecker have been similarly banned. We believe the evidence will demonstrate this at the evidentiary hearing.

Mr. Fambry has thus demonstrated that Defendant's actions in banning him from the official Facebook page and deleting his comments constitutes retaliation proscribed by the First Amendment. Accordingly, Plaintiff is likely to succeed on that element of his first Amendment claims.

In sum, Plaintiff has demonstrated above that he is likely to succeed on the merits his claims under the First Amendment, including his claims that Defendant's conduct constituted: speaker and viewpoint discrimination, impermissible prior restraint, and unlawful retaliation.

### 3. Plaintiff Otherwise Meets The Requirements Of Rule 65 (a) and (b) Thus Entitling Him To A Temporary Restraining Order And Preliminary Injunction To Prevent Defendant From Continuing To Ban Plaintiff From The Senator's Facebook Page.

In considering Plaintiff's request for emergency injunctive relief, the Court must consider:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir.2014) (per curiam) (en banc) (internal quotation marks omitted).

*Planned Parenthood of Greater Ohio v. Hodges*, *supra,* 188 F. Supp. 3d at 689.

Plaintiff has demonstrated above his likelihood of success on the merits of his First Amendment claims. Each of the remaining factors weighs decisively in favor of granting the requested temporary restraining order and preliminary injunctive relief.

### a. Violation of First Amendment Rights, By Definition, Causes Irreparable Harm.

It is settled law that violation of rights protected by the First Amendment necessarily causes irreparable harm.  The Supreme Court, as well as the Sixth Circuit, have held unequivocally that the violation of First Amendment proscriptions constitutes an irreparable injury sufficient to justify the grant of a preliminary injunction. "[T]he Supreme Court has recognized that even minimal infringement upon First Amendment values constitutes irreparable injury." *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 274 F.3d 377, 400 (6th Cir. 2001); *see also, Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury")). *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014).  Thus, as Plaintiff's First Amendment rights have been violated by Defendant's ban, Plaintiff has met his burden of demonstrating immediate and ongoing irreparable harm.

### b. Issuance Of An Injunction Will Cause No Harm To Anyone and Will Advance the Public Interest.

As the Sixth Circuit has held, "if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Deja Vu of Nashville, Inc. County, Tennessee*, 274 F.3d at 400, *citing, Connection Distrib. Co., v. Reno,* 154 F.3d 281, (6th Cir. 1998). "Moreover, 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Deja Vu of Nashville,* 274 F.3d at 400, *quoting, G & V Lounge, Inc. v. Michigan Liquor Control*

*Com'n,* 23 F.3d 1071, 1079 (6th Cir. 1994); *accord, Planned Parenthood Association v. City of Cincinnati,* 822 F.2d 1390, 1400 (6th Cir. 1987).

## CONCLUSION

So it is here. The public's interest and Plaintiff's interest in enforcing the fundamental right to free expression merge and become one. The issuance of a temporary restraining and preliminary injunction will advance these mutual interests. The denial of such an order and injunction will serve only to add to Plaintiff's irreparable injury. Accordingly, we urge the Court to grant a temporary restraining order and preliminary injunction prohibiting Defendant from continuing to ban Plaintiff from his official Facebook site and, thereby stem the otherwise irreparable harm being suffered by Plaintiff.

Respectfully submitted,

*/s/ Robert B. Newman*
ROBERT B. NEWMAN (0023484)
215 E. 9th St., Ste. 650
Cincinnati, Ohio 45202
(513) 639-7000
Bob@RobertNewmanAttorney.com

*/s/Michael J. O'Hara*
MICHAEL J. O'HARA (Bar No. 0014966)
O'HARA, TAYLOR, SLOAN & CASSIDY
25 Town Center Boulevard, Suite 201
Covington, Kentucky 41017
(859) 331-2000
FAX: (859) 578-3365
mohara@oharataylor.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATION

I certify that the foregoing motion has been served on Defendant via overnight mail and via email at his Senate email address.

*/s/ Robert B. Newman*
Robert B. Newman